2000 Utah Ct. App. 30

**Carla K. PARKER, Petitioner
and Appellee,**

v.

**Dale S. PARKER, Respondent
and Appellant.**

No. 981362–CA.

Court of Appeals of Utah.

Feb. 17, 2000.

Brian J. Gardner and Kellie F. Williams, Corporon & Williams, P.C., Salt Lake City, for Appellant.

Kent M. Kasting and Sharon A. Donovan, Dart, Adamson, Donovan & Hansen, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and WILKINS.[1]

## OPINION

ORME, Judge:

¶ 1 Dale Parker appeals the trial court's bifurcation of his divorce proceedings and challenges several aspects of the trial court's property division. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 Dale Parker and Carla Parker were married in 1971. After almost twenty-four years of marriage, the parties separated in October of 1995, and Ms. Parker filed for divorce the same month. Pursuant to Ms. Parker's motion, the trial court bifurcated the divorce proceedings and entered a decree of divorce on April 15, 1996. All other matters, including the division of marital assets, were reserved until a five-day trial held in July, August, and October, 1997. On April 27, 1998, the trial court entered its Supplemental Decree of Divorce and Supplemental Findings of Fact and Conclusions of Law, dividing the marital estate. In making its division, the court valued the assets as of April 15, 1996, the date of the initial divorce decree.

¶ 3 Prior to their divorce, the Parkers had nine bank accounts between them. Some were business accounts only, and some were used both for business and personal purposes. Mr. Parker presented evidence to the trial court indicating that Ms. Parker controlled the funds in all but one of the parties' accounts and that the total balance in those eight accounts had diminished from $134,516.49 at the time of separation to $36,986.74 when the initial decree was entered. Ms. Parker offered no explanation for the decrease except to testify that she had used the funds to "live on." The trial court then found that there had been

no specific accounting of all of the bank accounts ... either as to the source of deposits or nature of expenditures, that [would] allow the Court to accurately determine any net value of the accounts to divide the same fairly. Therefore, the Court awards each account to the holder of the same, and makes no valuation for purposes of the marital estate.

---

1. Justice Wilkins heard the arguments in this case and participated in its resolution prior to his swearing-in as a member of the Utah Supreme Court.

¶ 4 The Parkers also owned an interest in Murray Parkway, LLC, an entity formed to develop thirty-three acres of pasture land in Murray, Utah formerly owned by Mr. Parker's parents. The fifty percent of the corporate stock owned by the Parkers was in the name of Ms. Parker, while the other fifty percent was owned by Martin Merrill. The trial court awarded the Parkers' interest in the business entity to Ms. Parker, finding that Ms. Parker, an experienced real estate agent and investor, had been much more involved in the early stages of the development than Mr. Parker and that Ms. Parker had the expertise and experience to develop the property, while Mr. Parker did not. The trial court further found that, "[g]iven the animosity between the parties, [Mr. Parker's] request that he become involved in the project with [Ms. Parker] is not feasible." The court valued the parties' interest in Murray Parkway, LLC, as of the date of the bifurcated decree, awarded that interest exclusively to Ms. Parker, and awarded Mr. Parker other property equivalent in value to his half of their interest.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Mr. Parker raises several issues on appeal. Initially, he argues the trial court abused its discretion when it bifurcated the divorce proceedings, dissolving the marriage some two years before dividing the parties' property. Trial courts have broad discretion to bifurcate trials, and we review the trial court's bifurcation in this case for an abuse of that discretion. *See Olympus Hills Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P.2d 445, 462 (Utah Ct.App.1994), *cert. denied*, 899 P.2d 1231 (Utah 1995).

¶ 6 The other issues Mr. Parker raises concern the trial court's division of the marital estate. First, he asserts the trial court should have valued the marital estate at the time of trial rather than at the time the initial divorce decree was entered. He next argues it was error for the trial court simply to award the remaining sums in the parties' nine bank accounts to their holders rather than placing a value on the marital portion and dividing it equitably. This is especially true, he insists, because evidence

before the trial court indicated that Ms. Parker had dissipated marital funds in the accounts between the date of separation and entry of the initial decree of divorce. Finally, Mr. Parker alleges the trial court erred when it valued the Murray Parkway property as undeveloped property and awarded one-half of the Parkers' portion of that value to him. Instead, he argues, the trial court should have awarded him an ongoing interest in the property so that when, at some point in the future, the property is developed and marketed, he would be entitled to share in the profits. Trial courts enjoy "considerable discretion in determining the financial interests of divorced parties." *Hall v. Hall*, 858 P.2d 1018, 1021 (Utah Ct.App.1993). We therefore consider the court's valuation and division of the marital estate in this case against the highly deferential abuse-of-discretion standard. *See Shepherd v. Shepherd*, 876 P.2d 429, 433 (Utah Ct.App.1994); *Lee v. Lee*, 744 P.2d 1378, 1380 (Utah Ct.App.1987).

## BIFURCATION AND PROPERTY VALUATION DATE

¶ 7 Rule 42 of the Utah Rules of Civil Procedure gives trial courts discretion to bifurcate proceedings in appropriate situations. *See Olympus Hills Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P.2d 445, 462 (Utah Ct.App.1994), *cert. denied*, 899 P.2d 1231 (Utah 1995). The rule states: "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." Utah R. Civ. P. 42.

¶ 8 Utah courts have used bifurcation to allow divorcing spouses to more expeditiously obtain a divorce before embarking upon the sometimes more complex and time-consuming tasks of determining property division and deciding matters of support. *See Rogers v. Rogers*, 671 P.2d 160, 162 (Utah 1983) (explaining that dissolution and child custody issues were tried before property division and support issues); *Copier v. Copier*, 939 P.2d 202, 203 (Utah Ct.App.1997)

(noting that dissolution claim was bifurcated from all other issues in divorce action). "The severance of the divorce and economic claims [ensures] that the parties' personal lives will not be held hostage to economic disputes." *Curran v. Curran,* 446 Pa.Super. 633, 667 A.2d 1155, 1157 (1995).

¶ 9 In this case, the trial court granted Ms. Parker's motion for bifurcation, ruling that

pursuant to Rule 42 of the Utah Rules of Civil Procedure, it is for the convenience of the parties to grant bifurcation and Defendant is not prejudiced in any way in this matter, since all the assets accumulated by both parties prior to the granting of the Divorce will need to be disclosed.

Thus, it was the trial court's view that bifurcation would have no effect on the eventual distribution of the parties' marital assets, while letting the parties sever their marital relationship more immediately.

■ ¶ 10 Mr. Parker argues the trial court abused its discretion because the bifurcation effected a de facto property division that prejudiced him and kept him from receiving an equitable share of the marital estate. He further argues the trial court could and should have mitigated the prejudicial effect of the bifurcation by valuing the marital estate at the time of trial rather than at the time the initial divorce decree was entered. The initial decree gave Ms. Parker sole access, between the time of the divorce and the distribution of the marital estate, to the funds in the eight bank accounts that she controlled. However, since, at distribution, the court could equitably divide all assets owned by the parties at the time the initial decree was entered, the bifurcation did not prejudice Mr. Parker. Thus, we see no abuse of the trial court's broad discretion in its decision to bifurcate these proceedings.

■ ¶ 11 Moreover, the trial court was not required to value the estate at the time of trial so that Mr. Parker could share in the proceeds of marital funds invested in Ms. Parker's business pursuits. As a general rule, the date the decree of divorce is entered is the appropriate valuation date. *See Rappleye v. Rappleye,* 855 P.2d 260, 262 (Utah Ct.App.1993). We therefore cannot say the

trial court abused its discretion in using this valuation date as a starting point. That date was particularly well suited to valuing the real estate owned by Murray Parkway, LLC.

■ ¶ 12 However, Mr. Parker's argument that a different valuation date should have been used in dividing the parties' bank accounts is well taken. The trial court ruled that, for purposes of equitable division, the parties' property would be valued as of the date of the initial decree, April 15, 1996, with the following caveat: a different valuation date could be used "if either party has used a marital asset to increase the value of a post-marital asset, [or] if either party has hidden an asset or hidden the value of a property." At trial, Mr. Parker presented evidence that the balance in the eight bank accounts controlled by Ms. Parker had dwindled from $134,516.49 at the time of separation to $36,-986.74 at the time the initial decree was entered. Mr. Parker argued that the difference, almost $100,000, represented assets unilaterally dissipated by Ms. Parker, justifying valuing the bank accounts as of the date of separation rather than the date the divorce was granted.

■ ¶ 13 While marital assets are generally valued as of the date of the divorce decree, " 'where one party has dissipated an asset, hidden its value or otherwise acted obstructively,' the trial court may, in the exercise of its equitable powers, value a marital asset at some time other than the time the decree is entered," such as at separation. *Thomas v. Thomas,* 987 P.2d 603, 609 (Utah Ct.App. 1999) (quoting *Andersen v. Andersen,* 757 P.2d 476, 479 (Utah Ct.App.1988)). *See Marshall v. Marshall,* 915 P.2d 508, 516 n. 14 (Utah Ct.App.1996). Here, Mr. Parker presented the trial court with evidence tending to show that Ms. Parker had dissipated marital assets. The evidence showed that Ms. Parker's regular monthly income exceeded her expenses by about $2,000. Yet, in the few months following the parties' separation, Ms. Parker wrote checks to herself totaling nearly $100,000. This showing necessarily shifted the burden to Ms. Parker to show that the funds were not dissipated, but were used for some legitimate marital purpose. *Cf. Morgan v. Morgan,* 795 P.2d 684, 688

(Utah Ct.App.1990) (equal division of pretrial bank balances was improper when amount was incorrectly presumed dissipated; evidence of dissipation must first be shown, then burden would shift to show otherwise).

¶ 14 Ms. Parker wholly failed to meet her burden. She testified in conclusory and cryptic terms only that she used this substantial sum to "live on." Concerning a $63,000 check she wrote to herself within a month of the parties' separation, she testified, "I don't remember what I did with it. It wouldn't ... have been spent all in one place. It wouldn't be something I'd remember."

¶ 15 The trial court ultimately found that insufficient evidence had been presented to determine how to fairly divide the balances in the bank accounts:

> There is no specific accounting of all of the bank accounts, however, either as to the source of deposits or nature of expenditures, that will allow the Court to accurately determine any net value of the accounts to divide the same fairly. Therefore, the Court awards each account to the holder of the same, and makes no valuation for purposes of the marital estate.

We reject Ms. Parker's assertion that the trial court's silence is an "implicit finding" that no dissipation occurred. The pivotal aspect of the court's finding is that there was a failure of proof concerning the bank accounts. But the onus of this failure does not fall equally on the parties, as the trial court assumed, but rather falls on Ms. Parker, whose burden it was upon Mr. Parker's initial showing of apparent dissipation, to account for the missing money and demonstrate that it was spent to service or retire marital debt, to pay taxes for which both parties were responsible, to close the gap between income and reasonable living expenses, or for other marital purposes. Given Ms. Parker's failure to explain what had become of this "missing" sum of nearly $100,000 in just six months, Mr. Parker was entitled to one-half the sum in the eight bank accounts on the date of separation.

## VALUE OF THE MURRAY PARKWAY PROPERTY

■ ¶ 16 We turn now to Mr. Parker's argument that the trial court abused its discretion when it refused to grant him an ongoing interest in Murray Parkway, LLC, in which the Parkers had a fifty-percent interest. The trial court awarded Mr. Parker $57,615, representing half of their share of the value of the Murray Park property, the company's only asset, as of the date of the bifurcated decree. Mr. Parker argues that Utah law required the trial court to instead award him an ongoing interest in the company owning the property because the eventual value of the property as fully developed real estate could not be accurately projected.

■ ¶ 17 Utah law is clear that, "whenever possible, continued joint ownership by divorced spouses of closely held corporate stock should be avoided." *Savage v. Savage*, 658 P.2d 1201, 1205 (Utah 1983). *See Woodward v. Woodward*, 656 P.2d 431, 433 (Utah 1982). Departure from this general rule has been upheld only when there is "virtually no feasible alternative to an in-kind division." *Savage*, 658 P.2d at 1203. This is not such a case.

¶ 18 The trial court explicitly found that animosity between the parties prevented continued joint involvement in Murray Parkway, LLC. Moreover, the trial court found that it was "impossible to project [the] future value" of the development, while the value of the property—the company's only asset—was readily ascertainable as of the date of divorce.

¶ 19 The trial court did not abuse its discretion in this regard. The possible future profitability of the eventual development was not a " '*right* to receive monies in the future' " that accrued during the marriage, as Mr. Parker argues. *Woodward*, 656 P.2d at 432 (emphasis in original) (quoting *Kikkert v. Kikkert*, 177 N.J.Super. 471, 427 A.2d 76, 78 (Ct.App.Div.1981)). On the contrary, it was so speculative as to be scarcely more than wishful. The Murray Parkway development may in the future become a successful venture, but only after much yet-to-be invested time, money, and talent. "[W]e do not think

that the trial court's refusal to speculate about hypothetical future consequences was an abuse of discretion." *Alexander v. Alexander,* 737 P.2d 221, 224 (Utah 1987). Further, the trial court's disposition concerning this asset properly disentangled the Parkers from future acrimonious business involvement. We therefore decline to disturb the trial court's valuation and allocation of the parties' interest in Murray Parkway.

## CONCLUSION

¶ 20 The trial court acted within its discretion when it bifurcated the proceedings below, awarding the parties a divorce before adjudicating the property distribution issues. Likewise, it was within the trial court's discretion to generally value the marital estate for purposes of property division as of the date of the initial divorce decree. However, regarding the bank accounts, Mr. Parker showed a substantial and precipitous drop in the bank balances controlled by Ms. Parker, which she wholly failed to justify. We therefore remand to the trial court for the limited purpose of awarding Mr. Parker fifty percent of the bank balances on the date of the parties' separation, less any appropriate adjustment for amounts from the accounts already received by him. Finally, we affirm the court's refusal to award Mr. Parker an ongoing interest in Murray Parkway, LLC.

¶ 21 WE CONCUR: JUDITH M. BILLINGS, Judge, MICHAEL J. WILKINS, Judge.