2013 UT App 269

**Tanja Rodgers RAYNER, Petitioner and Appellee,**

v.

**Paul Thomas RAYNER, Respondent and Appellant.**

**No. 20120307–CA.**

Court of Appeals of Utah.

Nov. 15, 2013.

John M. Webster, for Appellant.

George K. Fadel, Bountiful, for Appellee.

Judge MICHELE M. CHRISTIANSEN authored this Opinion, in which Judges GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

Opinion

CHRISTIANSEN, Judge:

¶ 1 Paul Thomas Rayner (Husband) appeals the trial court's decree of divorce, challenging the trial court's property distribution and alimony award. We reverse and remand.

## BACKGROUND

¶ 2 Tanja Rodgers Rayner (Wife) and Husband were married in 1981. They separated nearly thirty years later in January 2010, and Wife filed a petition for divorce later that year. Husband had lost his job in April 2008. After losing his job, he received only minimal income working with a multi-level marketing firm. However, Husband and Wife had stock and multiple retirement accounts, and Husband began liquidating some of these assets after he lost his job and continued to do so during the parties' separation.

¶ 3 After a bench trial, the trial court found Husband to be underemployed and imputed to him an annual income of $40,000. The trial court also found that Husband had dissipated the parties' assets, spending $116,096 "on himself" during 2008, 2009, and 2010.[1] The imputed income and the dissipated assets factored into the trial court's ultimate alimony award and property distribution that accompanied the decree of divorce.

## ISSUES AND STANDARDS OF REVIEW

¶ 4 On appeal, Husband contends that the trial court exceeded its discretion by misapplying the law and that its findings of underemployment and dissipation are not supported by the evidence. "The trial court

---

1. We acknowledge, as Wife notes on appeal, that the trial court did not use the term "dissipate" in its ruling. However, the meaning of the trial court's ruling is clear.

in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Goggin v. Goggin*, 2013 UT 16, ¶ 44, 299 P.3d 1079 (citation and internal quotation marks omitted). However, we will reverse if "(1) there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error; (2) the evidence clearly preponderated against the finding; or (3) such a serious inequity has resulted as to manifest a clear abuse of discretion." *Id.* (citation and internal quotation marks omitted). Furthermore, "we cannot affirm its determination when the trial court abuses its discretion" by failing to enter "specific, detailed findings supporting its financial determinations." *Hall v. Hall*, 858 P.2d 1018, 1021 (Utah Ct.App.1993).

## ANALYSIS

### I. Imputed Income

¶ 5 Husband first contends that the trial court's finding of voluntary underemployment was unsupported by the evidence. The trial court stated that the evidence concerning whether Husband quit or was fired for cause was unclear. Therefore, the trial court's finding of underemployment focused on Husband's actions after losing his job. The trial court found that at the time his job ended in April 2008, Husband had an annual salary of about $88,000. Husband "initially made an attempt to find another job." He was "offered a job" in Nephi for about $40,000 a year, but "he turned that down" because "he didn't want to move" from his home in Bountiful. After his initial efforts, Husband "didn't make any other efforts to find employment." The trial court also found that Husband "has the ability to work regardless of the health concerns that he has." The trial court found that the "few hundred dollars a year" that Husband made from his multi-level marketing work—"and sometimes go[ing] in the hole"—did not qualify as reasonable employment. Based on Husband's education and ability, and the availability of the job in Nephi, the trial court concluded that Husband was underemployed.

¶ 6 Husband argues that no evidence supports these findings. He argues that the uncontroverted evidence instead requires the conclusion that he was fired for cause, that he was not actually offered the job in Nephi, that moving or commuting to Nephi was not an option, that his numerous health problems prevent him from working a rigorous schedule or using his left hand, and that his multi-level marketing work provided a viable source of income given his health restrictions.

¶ 7 "When determining the appropriate amount of alimony, a trial court must make findings as to 'the ability of the payor spouse to provide support.'" *Fish v. Fish*, 2010 UT App 292, ¶ 14, 242 P.3d 787 (quoting Utah Code Ann. § 30–3–5(8)(a)(iii) (LexisNexis Supp.2010)). "In doing so, '[a] court may impute income to an underemployed spouse.'" *Id.* (alteration in original) (quoting *Connell v. Connell*, 2010 UT App 139, ¶ 16, 233 P.3d 836). "[T]he imputation analysis . . . involves determining whether the [spouse] is voluntarily unemployed or underemployed and, if so, how much income ought to be imputed." *Busche v. Busche*, 2012 UT App 16, ¶ 13, 272 P.3d 748. A spouse is "'voluntarily unemployed or underemployed' when [he or she] intentionally chooses of his or her own free will to become unemployed or underemployed." *Id.* ¶ 16 (alteration in original) (citation and additional internal quotation marks omitted).

¶ 8 In *Busche*, we recently explained what is required under the first step of the imputation analysis to support a finding of voluntary underemployment following the loss of a job. If the trial court determines that a spouse has been involuntarily terminated, the trial court "must then consider what the [spouse] has done in the aftermath of termination to determine whether he or she has become voluntarily underemployed by virtue of his or her failure to then make reasonable efforts to obtain employment at a pay rate comparable to that of the lost employment." *Id.* ¶ 21. In addition to considering the spouse's efforts, the trial court must consider the spouse's "employment capacity and earnings potential." *Hall v. Hall*, 858 P.2d 1018, 1026 (Utah Ct.App.1993). Employment ca-

pacity involves consideration of the spouse's abilities and limitations, qualifications, experience, and skills. *Busche,* 2012 UT App 16, ¶¶ 21–22, 272 P.3d 748; *Hall,* 858 P.2d at 1026. An earning potential determination involves comparison of the spouse's current earnings with his or her historical income, "the prevailing wages for a person with his or her qualifications" and consideration of whether there are jobs reasonably available "in the relevant market for a person with the party's qualifications and experience." *Busche,* 2012 UT App 16, ¶¶ 21–23, 272 P.3d 748; *Hall,* 858 P.2d at 1026. In sum, "a finding of *voluntary* underemployment must be based on evidence that the party could be earning more with reasonable effort." *Busche,* 2012 UT App 16, ¶ 22, 272 P.3d 748.

■ ¶ 9 "Should the court determine that the petitioner is indeed voluntarily underemployed and that imputation is appropriate under the circumstances, it may then proceed to refine the analysis to arrive at a specific amount of income to be imputed." *Id.* ¶ 23. Under this second step of the analysis, the trial court must consider the following statutory factors, which "closely align" with the analysis under the first step:

> If income is imputed to a [spouse], the income shall be based upon employment potential and probable earnings as derived from employment opportunities, work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community, or the median earning for persons in the same occupation in the same geographical area as found in the statistics maintained by the Bureau of Labor Statistics.

Utah Code Ann. § 78B–12–203(7)(b) (LexisNexis 2012).[2]

■ ¶ 10 The Utah Code states that in contested cases, "[i]ncome may not be imputed to a [spouse] unless . . . a hearing is held and the judge . . . enters findings of fact as to the evidentiary basis for the imputation." *Id.* § 78B–12–203(7)(a). This statute was amended in 2007 and renumbered in 2008.[3] The prior version stated that in contested cases, "[i]ncome may not be imputed to a [spouse] unless . . . a hearing is held and a finding made that the [spouse] is voluntarily unemployed or underemployed." *Id.* § 78–45–7.5(7)(a) (Supp.2006).[4] By replacing the language requiring "a finding . . . that the [spouse] is voluntarily unemployed or underemployed," *id.,* with language requiring the judge to "enter[ ] findings of fact as to the evidentiary basis for the imputation," *id.* § 78B–12–203(7)(a) (2012), we read the statute as emphasizing the detailed findings of fact necessary to support a decision to impute income, as well as implicitly recognizing that whether a party is voluntarily underemployed or unemployed is really an ultimate fact or a legal conclusion which turns on the subsidiary facts found by the trial court. "Imputation is troubling when the obligor is charged with obligations that he may not be able to pay, even with the best of efforts." *Busche,* 2012 UT App 16, ¶ 17, 272 P.3d 748 (citation and internal quotation marks omitted). Indeed, in the alimony context, the imputation analysis is a component of determining the obligor's ability to pay and the recipient spouse's ability to support himself or herself. *Fish,* 2010 UT App 292, ¶¶ 14, 22, 242 P.3d 787; *Willey v. Willey,* 866 P.2d 547,

2. "Although this section of the Utah Code addresses imputation for the purposes of child support, it is also relevant to imputation in the alimony context." *Fish v. Fish,* 2010 UT App 292, ¶ 14 n. 5, 242 P.3d 787.

3. *See* Act of Feb. 7, 2008, ch. 3, § 1245, 2008 Utah Laws 48, 541–42; Act of July 1, 2007, ch. 354, § 4, 2007 Utah Laws 2146, 2149.

4. While the current statute no longer refers explicitly to a finding of voluntary unemployment or underemployment, *Connell v. Connell,* 2010 UT App 139, ¶ 16 n. 4, 233 P.3d 836, we conclude that voluntary unemployment and underemployment remain relevant, *see Busche v.*

*Busche,* 2012 UT App 16, ¶ 16, 272 P.3d 748 ("Imputation is used when the obligor is believed to be concealing income or to be shirking in his efforts to earn income." (quoting American Law Inst., *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 3.14(5) cmt. e(i) (2002))); *Fish v. Fish,* 2010 UT App 292, ¶¶ 14–17, 242 P.3d 787 (upholding a trial court's finding of underemployment under the current statute); *Griffith v. Griffith,* 959 P.2d 1015, 1018 (Utah Ct.App.1998) ("[T]he goal of imputing income is to prevent parents from reducing their child support or alimony by *purposeful* unemployment or underemployment." (emphasis added)), *aff'd,* 1999 UT 78, 985 P.2d 255.

554 (Utah Ct.App.1993). Imputation "cannot be premised upon mere conjecture; instead, it demands a careful and precise assessment requiring detailed findings." *Willey*, 866 P.2d at 554. Therefore, the trial court must enter not just a finding of voluntary unemployment or underemployment but specific, detailed findings "as to the evidentiary basis for the imputation," Utah Code Ann. § 78B–12–203(7)(a). *See Fish*, 2010 UT App 292, ¶¶ 20, 22, 242 P.3d 787 (remanding for additional findings on whether income should be imputed and how much); *Willey*, 866 P.2d at 554 (same); *Hall*, 858 P.2d at 1024–27 (same). *But see Mancil v. Smith*, 2000 UT App 378, ¶¶ 20–21, 18 P.3d 509 (stating, *in considering the prior version of the statute*, that requiring the trial court to make "explicit findings on each of the factors" "is too strict" a reading of the statute, at least when the findings can be necessarily implied or are based on undisputed evidence).

¶ 11 "Findings are adequate only if they are sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Hall*, 858 P.2d at 1021 (citation and internal quotation marks omitted); *accord Fish*, 2010 UT App 292, ¶ 20, 242 P.3d 787. "The trial court's decision to impute income may nonetheless be affirmed if the failure to have made the missing findings can be viewed as harmless error." *Hall*, 858 P.2d at 1025. "One method is to show that the undisputed evidence clearly establishes the factor or factors on which findings are missing." *Id.* (citation and internal quotation marks omitted); *see also Mancil*, 2000 UT App 378, ¶ 21, 18 P.3d 509 (concluding that specific findings on the statutory imputation factors were not necessary when the evidence was not in dispute). "Furthermore, even given controverted evidence, we could affirm the trial court's decision to impute income, absent outright expression of the statutorily mandated finding, if the absent findings can reasonably be implied." *Hall*, 858 P.2d at 1025. "Unstated findings can be implied if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding to resolve the controversy, but simply failed to record the factual deter-

mination it made." *Id.; see Reese v. Reese*, 1999 UT 75, ¶ 15, 984 P.2d 987 (determining that some of the statutory factors required in the imputation analysis were "necessarily implied" by the evidence). "Findings may not be implied, however, when the ambiguity of the facts makes such an assumption unreasonable." *Hall*, 858 P.2d at 1025 (citation and internal quotation marks omitted). For example, "we will not imply any missing finding where there is a matrix of possible factual findings and we cannot ascertain the trial court's actual findings." *Id.* at 1025–26 (citation and internal quotation marks omitted).

¶ 12 Husband argues both that the evidence was insufficient to support the underemployment determination and that the trial court abused its discretion by disregarding the imputation analysis required by *Busche* and the statute. However, we are unable to review Husband's arguments due to the inadequacy of the trial court's findings. " '[W]here the inadequacy of the trial court's findings of fact and conclusions of law results in our inability to ascertain the basis of the trial court's decision, [we are] prevented from effectively reviewing the trial court's decision and may remand for the entry of more-detailed findings.' " *Allen v. Ciokewicz*, 2012 UT App 162, ¶ 42, 280 P.3d 425 (second alteration in original) (quoting *Interstate Income Props., Inc. v. La Jolla Loans, Inc.*, 2011 UT App 188, ¶ 12, 257 P.3d 1073). We follow that course here.

¶ 13 We cannot say that "the undisputed evidence clearly establishes the factor or factors on which findings are missing." *See Hall v. Hall*, 858 P.2d 1018, 1025 (Utah Ct. App.1993). Nor can we reasonably infer the missing findings from the record before us. *See id.* The trial court included findings on Husband's minimal efforts to search for a job following his termination and Husband's ultimate decision to work with a low-paying multi-level marketing company. However, the trial court's findings of Husband's employment capacity are sparse. It stated that Husband had degrees "in the computer field" and had the ability to work "regardless of the health concerns that he has." Extensive evidence was presented at trial that Husband suffered from significant health problems

that prevented him from maintaining rigorous or stressful employment or employment with a restrictive schedule. The only contradictory testimony provided at trial was that Wife saw Husband doing physical labor in March 2011. The trial court may have determined that Husband's testimony was not credible. On the other hand, it could have concluded that the testimony was credible but that the health limitations did not preclude certain types of employment in the fields of computers or teaching, in which he had previously worked. The trial court never identified which types of employment for which Husband was qualified and able to do.

¶ 14 The trial court's findings on earning potential are equally sparse. The trial court stated that Husband, who lived with Wife in Bountiful at the time, was offered a job in Nephi. Although Husband did testify that he was offered a few jobs, including the one in Nephi, he later clarified in response to further questioning by the trial court that he had discussed the jobs with potential employers but did not apply and was not actually offered any jobs. He also testified that he considered teaching computer science but that the University of Utah was not hiring, and while the University of Phoenix occasionally had part-time positions available, the pay was too low. In its findings, the trial court mentioned only the job in Nephi, and it discussed the job in Nephi in the context of Husband's job search efforts and in calculating the amount of salary to impute. The trial court never entered a finding as to whether the job in Nephi was reasonably available in spite of the distance from Husband's home and Husband's health limitations or, alternatively, whether it was merely illustrative of jobs likely to be available to Husband in other areas of Utah. Nor did the trial court determine whether other appropriate jobs were reasonably available. Finally, the trial court never stated that Husband's underemployment was voluntary.

¶ 15 While the trial court's subsidiary findings on Husband's job search efforts may contribute to a conclusion of voluntary underemployment, Husband's employment capacity and earning potential are necessary elements of that analysis. Given the inadequacy of the trial court's findings on these elements, we are unable to review the merits of the trial court's decision to impute income to Husband. We therefore reverse and remand for the entry of adequately detailed findings on the relevant factors and for such recalculations or redeterminations as may then be in order.

## II. Dissipation

¶ 16 Husband next challenges the sufficiency of the evidence supporting the trial court's finding that Husband dissipated marital assets. In the alternative, he argues that, at most, the evidence supports only a finding that he spent $29,364 of the marital assets on non-family expenses and investments. Husband also argues that the trial court abused its discretion by not making adequate findings and by misapplying the law on the issue of dissipation.

¶ 17 Wife counters that Husband did not preserve a challenge to the trial court's ruling on dissipation. "[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted). However, a challenge to the sufficiency of the evidence supporting a trial court's ruling need not be preserved in civil cases. *See* Utah R. Civ. P. 52(b); *In re K.F.*, 2009 UT 4, ¶ 60, 201 P.3d 985 (stating that a challenge to the sufficiency of the evidence need not be preserved, but a challenge to the adequacy of findings must be). But as with Husband's challenge to the trial court's imputation of income, we are "prevented from effectively reviewing the trial court's decision" regarding dissipation given the inadequacy of the trial court's findings. *See Allen v. Ciokewicz*, 2012 UT App 162, ¶ 42, 280 P.3d 425 (citation and internal quotation marks omitted).

¶ 18 Following the loss of Husband's job, Husband liquidated $289,909 from stock and retirement accounts during 2008, 2009, and 2010. The trial court found that Husband "spent a lot of money on himself, on trips, on entertainment[,] on doing things that were not by way of family expenses." The trial

court determined that it was "reasonable . . . to just assume that it took $88,047"—Husband's average annual salary for the five years before he lost his job—to meet the family's expenses. The trial court calculated the shortfall between the assumed family expenses and Husband's income (for 2008) or imputed income (for 2009 and 2010). It then took the difference between the amount Husband liquidated each year and the shortfall for that year. The trial court concluded that any liquidated marital assets used to meet the shortfall between actual or imputed income and the assumed family expenses were spent on legitimate family expenses. But the trial court concluded without further explanation that any liquidated assets exceeding the shortfall were dissipated. The trial court's final calculation of the dissipated assets was $116,096. The court then gave Wife a credit for half of this amount in distributing the marital property. After factoring that credit into Wife's share of the remaining marital property, the trial court awarded Wife the marital home, all of Husband's tax shelter annuity plan, half of Husband's retirement account, and a judgment against Husband for $12,343. We now turn to the law governing dissipation.

¶ 19 "Section 30–3–5(1) of the Utah Code permits courts to issue 'equitable orders' relating to marital property in divorce cases." *Goggin v. Goggin*, 2013 UT 16, ¶ 47, 299 P.3d 1079. Generally, each party is presumed to be entitled to half of the marital property. *Id.* This presumption may be overcome in "exceptional circumstances." *Id.* ¶ 48 (citation and internal quotation marks omitted). "Further, 'the marital estate is [generally] valued at the time of the divorce decree or trial.'" *Id.* ¶ 49 (alteration in original) (quoting *Jacobsen v. Jacobsen*, 2011 UT App 161, ¶ 39, 257 P.3d 478). However, a trial court has broad discretion to deviate from this general rule when circumstances warrant:

> "[W]here one party has dissipated an asset, hidden its value or otherwise acted obstructively, the trial court may, in the exercise of its equitable powers, value a marital asset at some time other than the time the decree is entered, such as at

separation," "or may otherwise hold one party accountable to the other for the dissipation of marital assets."

*Id.* (quoting *Parker v. Parker*, 2000 UT App 30, ¶ 13, 996 P.2d 565; *Thomas v. Thomas*, 1999 UT App 239, ¶ 19, 987 P.2d 603). Utah case law suggests a number of factors that may be relevant to determining whether a party should be held accountable for the dissipation of marital assets: how the money was spent, including whether funds were used to pay legitimate marital expenses or individual expenses, *Parker*, 2000 UT App 30, ¶¶ 13, 15, 996 P.2d 565; Thomas, 1999 UT App 239, ¶ 20, 987 P.2d 603; *Shepherd v. Shepherd*, 876 P.2d 429, 433 (Utah Ct.App. 1994); *Andersen v. Andersen*, 757 P.2d 476, 480 (Utah Ct.App.1988); the parties' historical practices, *Thomas*, 1999 UT App 239, ¶ 20, 987 P.2d 603; the magnitude of any depletion, *Shepherd*, 876 P.2d at 433; the timing of the challenged actions in relation to the separation and divorce, *id.*; and any obstructive efforts that hinder the valuation of the assets, *Goggin*, 2013 UT 16, ¶¶ 49, 53, 299 P.3d 1079; *Andrus v. Andrus*, 2007 UT App 291, ¶ 13, 169 P.3d 754. After an "initial showing of apparent dissipation" by one party, the burden shifts to the other party "to show that the funds were not dissipated, but were used for some legitimate marital purpose." *Parker*, 2000 UT App 30, ¶¶ 13, 15, 996 P.2d 565.

¶ 20 When a court finds that a spouse has dissipated marital assets, the court should determine the amount of dissipated assets and calculate the value of the marital property as though the assets remained. *Goggin*, 2013 UT 16, ¶¶ 49, 53, 299 P.3d 1079. "As a result, when the court conducts its equitable distribution of the marital property, the other spouse should receive a credit for his or her share of the assets that were dissipated." *Id.* ¶ 49. But "when a spouse's behavior prevents the court from determining the precise amount of dissipated assets, the court should estimate, to the best of its ability, the upper limit of the amount of assets that the spouse may have dissipated." *Id.* ¶ 53.

¶ 21 Because the principle of dissipation represents a deviation from the general rule,

its use "must be supported by sufficiently detailed findings of fact that explain the trial court's basis for such deviation." *Rappleye v. Rappleye*, 855 P.2d 260, 262–63 (Utah Ct. App.1993); *accord Jacobsen v. Jacobsen*, 2011 UT App 161, ¶ 39, 257 P.3d 478; *see Andersen*, 757 P.2d at 479–80 (remanding for additional findings on the issue of dissipation); *Peck v. Peck*, 738 P.2d 1050, 1051–52 (Utah Ct.App.1987) (same).

¶ 22 Here, the trial court's findings are inadequate to explain its deviation from the general rules governing the valuation of marital property. The parties did not dispute that the assets were liquidated and spent. But the evidence addressing the use of the liquidated assets was disputed, and subsidiary findings cannot be reasonably implied. *See Hall v. Hall*, 858 P.2d 1018, 1025 (Utah Ct.App.1993). The trial court did not explain why it concluded that the liquidation and spending of the assets qualified as dissipation. The trial court stated only that Husband had "spent a lot of money on himself, on trips, on entertainment[,] on doing things that were not by way of family expenses." This finding does not provide "sufficiently detailed" support for the trial court's conclusion. *See Rappleye*, 855 P.2d at 262–63. Furthermore, rather than calculating the amount of assets actually dissipated, the trial court based its valuation on an assumption of legitimate family expenses. A trial court may "estimate, to the best of its ability, the upper limit of the amount of assets that the spouse may have dissipated." *Goggin*, 2013 UT 16, ¶ 49, 299 P.3d 1079. But such an approach is appropriate only "when a spouse's behavior prevents the court from determining the precise amount of dissipated assets." *Id.* ¶ 53; *see also Andrus*, 2007 UT App 291, ¶ 13, 169 P.3d 754. The trial court did not enter any findings suggesting that Husband's behavior in any way prevented it from determining the precise amount of dissipated assets.[5] In fact, as the trial court acknowledged, extensive testimony and exhibits were presented regarding how the liquidated funds were spent. The trial court stated, "There were many documents filed and statement[s] as to what income and expenses were. There was much that would have taken a forensic accountant to analyze." When insufficient evidence is presented to the court to support a finding of dissipation, the general rules governing the valuation of marital property apply. *See Parker*, 2000 UT App 30, ¶¶ 13, 15, 996 P.2d 565 (explaining the burdens of production and persuasion attending a claim of dissipation). However, if sufficient evidence is presented to the court to support a finding of dissipation, the trial court must explain any deviation from the general rule with "sufficiently detailed findings." *See Rappleye*, 855 P.2d at 262–63.

¶ 23 We therefore reverse and remand for the trial court to enter more detailed findings determining whether the liquidated assets were in fact dissipated and what the precise amount of any dissipated assets was or why the amount of any dissipated assets must be estimated. We also direct the trial court to enter any recalculations and redeterminations as may then be in order, such as an updated division of the marital estate, including redivision of the marital home, Husband's annuity plan, and Husband's retirement account.

## CONCLUSION

¶ 24 Because the trial court's findings are inadequate, we are unable to effectively review the trial court's decision to impute $40,000 in annual income to Husband for purposes of calculating alimony and to include $116,096 as dissipated assets in its valuation of the marital property. "Accordingly, we remand for more detailed findings without restriction to any corrections or modifications the trial court deems appropriate." *See Baum v. Hayes*, 2008 UT App 371, ¶ 16, 196 P.3d 612.

5. We note that *Goggin v. Goggin*, 2013 UT 16, 299 P.3d 1079, was issued after the trial court had ruled in the present case, and thus the trial court did not have the benefit of this guidance when it entered its findings.