2000 UT App 378

**Dawn MANCIL, Plaintiff and Appellee,**

v.

**Gerald SMITH, Defendant and Appellant.**

**State of Utah, Office of Recovery Services, Intervenor.**

**No. 990804–CA.**

Court of Appeals of Utah.

Dec. 29, 2000.

Don R. Petersen and Leslie W. Slaugh, Howard, Lewis & Petersen, Provo, for Appellant.

Dawn Mancil, Orem, Pro Se.

Karma Dixon, Asst. Atty. Gen., Salt Lake City, for Intervenor.

Before Judges BILLINGS, ORME and THORNE.

## OPINION

ORME, Judge:

¶ 1 Appellant Gerald Smith appeals the trial court's dismissal of his petition to modify his child support obligation. His main contention is that income should not have been imputed to him while he was a full-time college student, earning a bachelor's degree. We disagree and affirm.

## BACKGROUND

¶ 2 Smith and Dawn Mancil were married on July 17, 1991. During the course of their marriage, they had two children. Throughout the marriage, Smith suffered from a severe hearing disability, but had several jobs, including working on a loading dock, in a cafeteria, as a janitor, and as a mail clerk.

¶ 3 The parties were divorced in 1995. Smith was in school at the time of the divorce. The divorce decree ordered Smith to begin to pay child support as soon as he was "employed or no longer attends school full time, or graduates from college, or becomes financially solvent, or for any other reason." A few weeks after the divorce, Smith dropped out of school and began work at Enrich Corporation as a mail clerk, but he failed to inform the court or Mancil that he was working and made no effort to pay child support.

¶ 4 In 1997, the Office of Recovery Services filed a motion to intervene in the parties' divorce case because it was providing support for Mancil and the children. The motion to intervene was granted, and the State then filed a petition to modify the prior decree regarding child support. Mancil joined in the State's petition. The State and Mancil sought to have Smith pay child support, given his employment with Enrich Corporation. In the fall of 1997, Smith quit his job at Enrich and moved to Rochester, New York, to obtain a bachelor's degree at a technology school for the deaf.

¶ 5 At the trial on the State's petition in January of 1998, the trial court ruled in favor of the State. The trial court imputed income of $1,040 per month to Smith based on his income at his prior jobs. The trial court specifically rejected Smith's argument that his enrollment at the technology school was "training to establish basic job skills," which would exempt him from income imputation in accordance with Utah Code Ann. § 78–45–7.5(7)(d) (Supp.2000). An Order of Modification was entered in April of 1998, requiring Smith to pay monthly child support.

¶ 6 Just prior to the entry of the Order of Modification, Smith filed a Petition to Amend Decree of Divorce based on the Social Security Administration's determination that he was disabled. A few months later, Smith filed a motion for summary judgment, arguing that he was a full-time student with no income other than his Social Security Disability Insurance and so should be excused from paying child support.

¶ 7 Oral argument on Smith's summary judgment motion was held on May 27, 1999. The trial court denied Smith's motion for summary judgment. It also held that the determination by the Social Security Administration that Smith was disabled was not a substantial change of circumstances which justified modifying the prior award of child

support and granted the State's motion to dismiss. Smith appealed.

¶ 8 At oral argument before this court, Mancil, appearing pro se, presented her position to this court as best she could. Given the important question of the propriety of imputing income to an obligor who is attending college to obtain a bachelor's degree, this court was concerned with the potentially far-reaching implications of our ruling. Therefore, we asked the State, which inexplicably had not participated in the appeal, to file a brief detailing its perspective "on the important questions of policy and statutory interpretation presented in the appeal." It did so in timely fashion, and Smith filed a reply.

## ISSUES AND STANDARD OF REVIEW

¶ 9 We first address whether the trial court correctly determined that Smith's pursuit of a bachelor's degree did not exempt him from having income imputed to him because such a course of higher education does not constitute "career or occupational training to establish basic job skills" under Utah Code Ann. § 78–45–7.5(7)(d)(iii) (Supp.2000). This is a question of statutory construction, reviewed for correctness. *See Wells v. Wells,* 871 P.2d 1036, 1038 (Utah Ct.App.), *cert. denied,* 244 Utah Adv. Rep. 56 (1994).

¶ 10 Second, Smith contends that even if income could legally be imputed to him, the trial court erred in imputing income absent specific findings concerning the prevailing earnings of persons of similar backgrounds in the community and his potential for employment. A trial court's findings are adequate only if they are " 'sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.' " *Stevens v. Stevens,* 754 P.2d 952, 958 (Utah Ct.App.1988) (citation omitted).

¶ 11 Third, Smith argues that the trial court erred in summarily dismissing his petition to amend based on its conclusion that the Social Security Administration's determination of disability was not a substantial change of circumstance justifying a modification of child support. "In determining whether a trial court properly dismissed an action under Rule 12(b)(6), we assume that the factual allegations in the complaint are true and we draw all reasonable inferences in the light most favorable to the plaintiff." *Whipple v. American Fork Irr. Co.,* 910 P.2d 1218, 1219 (Utah 1996). We review a determination on whether a substantial change of circumstances has been shown for abuse of discretion. *See Wells,* 871 P.2d at 1038.

## ANALYSIS

### A. Basic Job Skills

¶ 12 Utah Code Ann. § 78–45–7.5 (Supp. 2000) specifies how the income of a parent is determined in calculating child support. When a parent is found to be voluntarily unemployed, as was Smith in this case, the trial court may impute income to that parent. *See* Utah Code Ann. § 78–45–7.5(7) (Supp. 2000). However, the imputation of income is prohibited in a limited number of circumstances, including when "a parent is engaged in career or occupational training to establish basic job skills." *Id.* § 78–45–7.5(7)(d)(iii).

¶ 13 The parties agree that the precise scope of what constitutes "career or occupational training to establish basic job skills" has never been determined by our appellate courts. Relying on our opinion in *Hill v. Hill,* 869 P.2d 963, 965 n. 1 (Utah Ct.App. 1994), which held that education beyond a bachelor's degree was not "career or occupational training to establish basic job skills," Smith contends that a bachelor's degree would therefore so qualify. Alternatively, he argues that at least his quest for a bachelor's degree was "to establish basic job skills" in the field of computer technology.

¶ 14 Section 78–45–7.5 is part of a model act, the Uniform Civil Liability for Support Act (UCLSA), *see* Utah Code Ann. § 78–45–1 (1996), which has been adopted in Utah. The statute does not define the term "basic job skills," and neither the parties nor the State have called to our attention any pertinent legislative history or commentary from the drafters of the UCLSA. In addition, the UCLSA has apparently been adopted in only two other states, Maine and New Hampshire, *see id.* ("Uniform Laws" note), but neither of these states' versions of the act contain the

"basic job skills" provision at issue in this case.[1] *See* Maine Rev. Stat. Ann. §§ 19A–3501 to –06 (1999); New Hampshire Rev. Stat. Ann. §§ 546–A:1 to –12 (2000). Therefore, neither state has any case law analyzing the scope of this provision.

¶ 15 Absent helpful case law, we consider the plain meaning of the key terms. Smith's argument that his pursuit of a bachelor's degree is "career or occupational training to establish basic job skills" does not correspond to how those words are commonly defined. The dictionary defines "career" as "a field for or pursuit of *consecutive progressive* achievement." *Webster's Third New International Dictionary* 338 (1993) (emphasis added). "Occupation" is defined as "a craft, trade, profession or other means of earning a living." *Id.* at 1560. Finally, "basic" is defined as "constituting or serving as the basis or starting point." *Id.* at 181. Viewed in this context, it seems clear that the basic job skills training envisioned by the statute is training which can aid a person in achieving an income beyond the minimum wage job which can be had with no training at all, i.e., training for the "starting point" on a "consecutive progressive" career track. Of course, a bachelor's degree provides employment opportunities far beyond what is needed "as the basis or starting point" to rise above a minimum wage job. Thus, a four-year college education is not the "training to establish basic job skills" that is contemplated by the statute, which training would ordinarily be of a much shorter duration.

¶ 16 Our conclusion is fully consistent with the policy underlying Utah's child support laws, which are designed to maximize support to children from both parents. *See* Utah Code Ann. § 78–45–3(1) (Supp.2000) ("Every father shall support his child[.]"); *id.* § 78–45–4(1) ("Every woman shall support her child[.]"). "Utah's clear policy is to require both parents to support their child to the extent that each is financially able." *Department of Human Servs. ex rel. Parker v.*

*Irizarry*, 945 P.2d 676, 683 (Utah 1997) (Zimmerman, C.J., dissenting). To allow a parent to disregard this duty over the course of a four-year college education would run counter to this policy. A child's right to ongoing support should not be held hostage to a parent's desire to get a higher education, even if the parent's degree will eventually allow the parent to pay support at a higher level.[2].

¶ 17 Morever, in today's society, the pursuit of a higher education simply does not preclude employment. In 1998, 14% of full-time college students in the United States worked full time, while an additional 38% worked at least part time. *See* U.S. Census Bureau, *Employment Status of High School and College Students 15 Years Old and Over, by Level of School, Attendance Status, Age, Gender, Race, and Hispanic Origin: October 1998*, (October 6, 1999) <http://www.census.gov/ population/ socdemo/ school/ report98/ tab11.pdf>. While those percentages are likely to be even higher among students with dependent children, the fact that 52% of all full-time college students are gainfully employed shows that contemporary college students are not forced to choose between earning an income and getting a higher education—they can do both.

¶ 18 Therefore, we hold that section 78–45–7.5(7) applies only to short-term job training that is a condition of employment at a fairly fundamental level. It is not necessary in this case that we definitively state what kind of training would qualify: Would a year of vocational school training in welding? An 18-month course to obtain a paralegal's certificate? A two-year program at a community college culminating in an associate's degree in bookkeeping? We can, however, say that obtaining a bachelor's degree affords employment at a level so far beyond "basic" that, as a matter of law, it does not satisfy the statute.

---

1. Or, for that matter, any of the limitations on income imputation contained in section 78–45–7.5(7)(d).

2. For better or worse, one's income level and resulting ability to pay child support are not necessarily enhanced by a college education. A good car salesman with a high school diploma may well earn more than an elementary school teacher with a bachelor's degree.

### B. Imputation of Income

¶ 19 The trial court based its calculation of child support on Smith's imputed income. Section 78–45–7.5(7) governs the imputation of income for purposes of determining support obligations. The statute states:

> If income is imputed to a parent, the income shall be based upon employment potential and probable earnings as derived from work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community, or the median earning for persons in the same occupation in the same geographical area as found in the statistics maintained by the Bureau of Labor Statistics.

Utah Code Ann. § 78–45–7.5(7)(b) (Supp. 2000).

¶ 20 Smith argues that in imputing income to a parent, a trial court must make explicit findings on each of the factors listed in section 78–45–7.5(7). His reading of the statute is too strict. In *Reese v. Reese,* 1999 UT 75, 984 P.2d 987, a parent argued that the trial court erred in imputing income to her based solely on her past work history. *See Reese,* 1999 UT 75 at ¶ 11, 984 P.2d 987. The trial court had failed to make any specific findings regarding her "occupation qualifications" or the "prevailing earnings for persons of similar backgrounds in the community." *Id.* at ¶ 15, 984 P.2d 987. The Utah Supreme Court held that these findings were "necessarily implied by the nature of the work [she] had regularly performed [in the past]." *Id.*

[5] ¶ 21 The trial court in this case did basically the same thing as was done by the trial court in *Reese.* The court looked at Smith's prior work history and noted his wages at his last place of employment, Enrich Corporation. The court also looked at his employment history and income prior to his employment at Enrich. The court then imputed income at a rate of pay, $6.00 an hour, that was less than Smith's pay rate at Enrich, but consistent with his longer-term employment history. Explicit findings concerning "occupational qualifications" and

"prevailing earnings of persons of similar backgrounds in the community" were not necessary, as Smith's qualifications, background, and actual past earnings were not in dispute. *See id.* at ¶¶ 15–16, 984 P.2d 987. Therefore, there was an adequate factual basis supporting the trial court's decision to impute income to Smith at a rate of $6.00 an hour.

### C. Child Support Modification

[6, 7] ¶ 22 "[C]hild support modifications are proper only when the party seeking modification demonstrates a material change in circumstances." *Brooks v. Brooks,* 881 P.2d 955, 958 (Utah Ct.App.1994). *See* Utah Code Ann. § 78–45–7(1)(a) (Supp.2000). The Social Security Administration's determination that Smith was disabled was not a material change in circumstances justifying a child support modification.

¶ 23 Smith's hearing impairment was of longstanding duration and existed at the time of the divorce. The Social Security determination did not change the fact that Smith had held numerous full-time jobs while suffering from the same severe hearing disability that was the basis of the disability determination. Because the determination did not signal that his condition had worsened in any way, Smith would presumably be capable of holding similar jobs in the future. All the determination did was make him eligible for $448 a month in Social Security disability benefits.[3] The Social Security determination simply did not affect the trial court's conclusion that Smith had worked full time in the recent past and was capable of paying child support. Smith presented no evidence that his disability had worsened or that he was no longer able to hold a full-time job. Without a showing of a relevant "material change in circumstance," the trial court was correct in summarily dismissing his petition to amend.

### CONCLUSION

¶ 24 We uphold the trial court's dismissal of Smith's petition to amend. First, the pursuit of a bachelor's degree does not consti-

---

3. The trial court found that Smith's Social Security benefits were "not ... income for the purposes of determining child support based on ad-

justed gross income." That finding has not been challenged on appeal.

tute "career or occupational training to establish basic job skills" under section 78–45–7.57(7)(d)(iii), and it was therefore proper to impute income to Smith. Second, there was adequate factual support for the income rate imputed to Smith by the trial court. Finally, the Social Security Administration's disability determination was not a material change of circumstance justifying a modification of the child support order.

¶ 25 Affirmed.

¶ 26 WE CONCUR: JUDITH M. BILLINGS, Judge, and WILLIAM A. THORNE, Jr., Judge.