2010 UT App 292

**Diane FISH, Petitioner and Appellee,**

v.

**Jeffery J. FISH, Respondent and Appellant.**

No. 20090916–CA.

Court of Appeals of Utah.

Oct. 21, 2010.

19.  *Kennedy,* 600 P.2d at 537.

Robert L. Neeley, Ogden, for Appellant.

Timothy W. Blackburn and William A. Street, Ogden, for Appellee.

Before Judges McHUGH, ORME, and VOROS.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Jeffrey J. Fish (Husband) appeals from the trial court's award of alimony to Diane Fish (Wife). We reverse and remand.

## BACKGROUND

¶ 2 Husband and Wife were married September 5, 1980. Husband joined the United States Air Force shortly before the parties' marriage in June 1980 and retired in August 2000 with a 30% disability rating for low back strain, sinus problems, and eczema. At the time of his retirement, Husband was making $38,000 per year doing multimedia work relating to training for the military. After retiring, Husband earned $27,000 per year as an aircraft mechanic between September 2000 and October 2001, earned $3,333–$3,800 per month as a logistics specialist between October 2001 and May 2003, had no income between May 2003 and April 2006, and earned $25,382 per year as an aircraft mechanic between April 2006 and September 2007. Husband quit his aircraft mechanic job in September 2007 to start a lawn care business, but his plans failed. Husband also worked briefly at a plastics company in 2006 or 2007, training to become the plant manager. Although his starting salary was $16–$17 per hour, the former plant manager, who was making $120,000 per year when he retired, testified that Husband could have made $60,000–$80,000 per year once he became the plant manager. However, Husband quit his job at the plastics company after only five days because he did not like the company's owner.

¶ 3 Shortly after Husband quit his aircraft mechanic job in 2007, Wife filed for divorce. Husband's first attorney[1] suggested that he see a physician with the Department of Veterans Affairs (VA) to obtain a referral from his Air Force doctor to a physical therapist for a functional capacity evaluation. The physical therapist concluded that Husband was not physically able to continue working as an aircraft mechanic due to back and foot problems. The physical therapist had been acquainted with Husband and Wife when they lived in California but testified that he had not seen them for "six or eight years" prior to performing the evaluation. Although the physical therapist testified that he did not know about the divorce when he performed the evaluation and that his friendship with Husband and Wife did not affect his conclusions, he admitted on cross-examination that he "probably should have" referred Husband to another physical therapist to perform the evaluation.

¶ 4 The results of the functional capacity evaluation qualified Husband for vocational rehabilitation through the VA. At the time of trial, Husband was unemployed and attending technical college to become a computer technician. Husband estimated that he could make approximately $9 per hour as a computer technician, which would result in a full-time salary of $18,720 per year.

¶ 5 Because he was unemployed between the time of the parties' separation and the time of trial, Wife requested that Husband undergo a vocational assessment by a specialist to determine his earning potential. The vocational specialist testified that she did not believe that Husband's back and foot

---

1. Husband ultimately hired different counsel to represent him in the trial court.

problems prevented him from working full-time as an aircraft mechanic at a salary of $43,030–$55,720 per year. The vocational specialist concluded that Husband was also qualified to work as a sales representative with a salary of $28,330–$53,690 per year or as a logistics specialist with a salary of $24,432–$57,709 per year. The vocational specialist further testified that there were a significant number of local jobs available in each of these areas.

¶ 6 Two of Husband and Wife's friends also testified that Husband had helped them in recent years with physically demanding tasks such as moving railroad ties, laying sod, installing electrical cables, and lifting hay bales. They also testified that he had participated with them in various recreational activities such as boating, jet skiing, and tubing, all without complaining of back pain.

¶ 7 Wife works as an office manager at a dentist's office and makes $15 per hour; she currently works part-time. Wife testified at trial that she has a high school diploma and attended technical college for medical assisting. She also stated that she was looking for a full-time job at the time of trial, that she was willing to change jobs to obtain employer-provided medical insurance, and that she did not believe it was "unreasonable to say that [she was] able to work 40 hours a week."

¶ 8 The trial court found that the physical therapist's testimony was "suspect because he was a close friend of [Husband] for many years." Considering the testimony that Husband had participated in several physically demanding activities without complaint and the testimony of the vocational specialist that Husband "could earn between $24,000 and $57,000 each year," the trial court found that Husband was "capable of working full-time," that he was "underemployed," and that he should be imputed "income in a sum between $30,000 and $40,000 annually." The trial court found that Husband received $1,703 retirement pay from the military each month, of which $421 was disability pay,[2] and that at the time of trial Husband was receiving $671 per month for vocational rehabilitation. The trial court also found that Husband's claimed expenses of $2,374 per month were reasonable.

¶ 9 In addition, the trial court found that Wife had earned $25,000 per year gross and $1,628 per month net income in 2008, and that she had an average gross monthly income of $2,000 during the first four months of 2009. The court found that Wife's claimed monthly expenses of $3,500–$3,600 were slightly excessive but concluded that $3,000 per month was reasonable. The court also determined that the parties' tax returns for the past seven years demonstrated that they "are capable of earning a reasonable income."

¶ 10 The trial court concluded that both parties had the ability to work and earn income but that Wife has a need for alimony. Based on its findings and conclusions, the court awarded Wife alimony of $800 per month for twenty-seven years, the length of the marriage.

## ISSUES AND STANDARD OF REVIEW

¶ 11 Husband argues that the trial court erred in failing to impute income to Wife, in imputing a yearly income of $30,000–$40,000 to him, and in calculating the amount of alimony. "We review a trial court's award of alimony for an abuse of discretion" and "will not disturb a trial court's ruling on alimony as long as the court exercises its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions." *Connell v. Connell*, 2010 UT App 139, ¶ 5, 233 P.3d 836 (internal quotation marks omitted).

## ANALYSIS

¶ 12 In fashioning an alimony award, the trial court is required to consider the payor spouse's ability to pay and the recipient spouse's need and ability to produce income.[3] *See* Utah Code Ann. § 30–3–

---

2. Wife was awarded 49.5% of the non-disability military pay.

3. The other alimony factors, *see* Utah Code Ann. § 30–3–5(8)(a) (Supp.2010), are not relevant to this appeal.

5(8)(a)(i)–(iii) (Supp.2010).[4] Furthermore, the award should advance, as much as possible, the purposes of alimony by assisting the parties in achieving the same standard of living they enjoyed during the marriage, equalizing the parties' respective standards of living, and preventing either spouse from becoming a public charge. *See Jensen v. Jensen,* 2008 UT App 392, ¶ 9, 197 P.3d 117.

¶ 13 Although the trial court did not exceed its discretion by concluding that Husband had the ability to work, the trial court's findings are inadequate to support the salary range imputed to Husband. Furthermore, the low end of that range does not support the trial court's conclusion that Husband had the ability to pay Wife $800 per month in alimony. The trial court's findings were also insufficient concerning Wife's ability to produce income. However, we see nothing in the record to support Husband's claim that the trial court improperly ignored the parties' standard of living during the marriage in calculating their ongoing needs.

## I. Imputation of Income to Husband and Husband's Ability to Pay

¶ 14 When determining the appropriate amount of alimony, a trial court must make findings as to "the ability of the payor spouse to provide support." Utah Code Ann. § 30–3–5(8)(a)(iii). In doing so, "[a] court may impute income to an underemployed spouse." *Connell,* 2010 UT App 139, ¶ 16, 233 P.3d 836. Utah Code section 78B–12–203 provides that imputed income "shall be based upon employment potential and probable earnings as derived from employment opportunities, work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community, or the median earning for persons in the same occupation in the same geographical area." Utah Code Ann. § 78B–12–203(7)(b) (2008).[5]

¶ 15 Husband makes three challenges to the trial court's imputation of income to him. First, Husband argues that the trial court erred in determining that he was capable of working full-time as an aircraft mechanic or in a similarly compensated occupation. Second, he claims that the trial court erred in imputing income to him despite the fact that he is currently attending technical school. *See generally id.* § 78B–12–203(7)(d)(iii) (precluding a trial court from imputing income to an individual who is "engaged in career or occupational training to establish basic job skills"). Third, Husband contends that the trial court's findings do not support the conclusion that he has the ability to pay Wife $800 per month. We consider each of Husband's arguments in turn.

### A. The Trial Court Did Not Err in Concluding that Husband Is Capable of Earning a Reasonable Income.

¶ 16 Contrary to Husband's assertions, the evidence presented at trial supports the trial court's findings of fact and its ultimate conclusion that Husband had the ability to work full-time as an aircraft mechanic. Specifically, Husband's friends testified that he had participated in physically demanding activities with them in recent years without complaint; Husband's former aircraft mechanic supervisor did not recall Husband complaining of back pain; Husband had continued to work in the same profession for many years, despite having a history of back pain dating back to as early as 1984;[6] and Husband continued to work as an aircraft mechanic on and off for several years after retiring, including as recently as one month before the parties' separation.

¶ 17 Furthermore, even if Husband was physically incapable of continuing to work as an aircraft mechanic, the vocational expert indicated that there were other less physical-

---

4. We cite to the current version of the Utah Code as a convenience to the reader.

5. Although this section of the Utah Code addresses imputation for the purposes of child support, it is also relevant to imputation in the alimony context. *See Connell v. Connell,* 2010 UT App 139, ¶ 16, 233 P.3d 836 (employing section 78B–12–203 for purposes of calculating alimony).

6. Although Husband received 30% partial disability pay from the military, it is unclear what portion of that disability was attributable to his lower back problems as opposed to his sinus problems and eczema.

ly demanding jobs for which Husband qualified where he could earn more than the $9 per hour he was expecting to make after completing his training as a computer technician. For example, the vocational specialist recommended that Husband seek employment as a logistics specialist, a position he had previously held for nearly two years, or as a sales representative. Finally, the trial court was in the best position to evaluate the credibility of the witnesses and the persuasiveness of the evidence. *See Valcarce v. Fitzgerald,* 961 P.2d 305, 314 (Utah 1998). Husband's key witness concerning his inability to work as an aircraft mechanic was a physical therapist who admitted both that he had a friendship with Husband and that a more neutral physical therapist should have performed Husband's assessment. Under these circumstances, we cannot conclude that the trial court exceeded its discretion by determining that Husband was capable of obtaining full-time employment in a more favorably compensated field than that of a computer technician.

### B. Husband's Enrollment in Technical College Did Not Preclude the Trial Court from Imputing Income to Him.

¶ 18 Furthermore, Husband's enrollment in technical college did not preclude the trial court from imputing income to him. While Husband is correct that Utah Code section 78B–12–203 precludes a trial court from imputing income to an individual who is "engaged in career or occupational training to establish basic job skills," Utah Code Ann. § 78B–12–203(7)(d)(iii), Husband is not in need of basic job skills training. In *Mancil v. Smith,* 2000 UT App 378, 18 P.3d 509, this court held that "the basic job skills training envisioned by the statute is training which can aid a person in achieving an income beyond the minimum wage job which can be had with no training at all, i.e., training for the 'starting point' on a 'consecutive progressive' career track." *Id.* ¶ 15. The policy behind Utah's alimony laws, "to enable the receiving spouse to maintain as nearly as possible the standard of living enjoyed during the marriage and to prevent the spouse from becoming a public charge," *see Connell v. Connell,* 2010 UT App 139, ¶ 9, 233 P.3d

836 (internal quotation marks omitted), is not furthered by permitting the payor spouse to pursue unnecessary continuing education that precludes him from paying alimony. *Cf. Mancil,* 2000 UT App 378, ¶ 16, 18 P.3d 509 (holding that a parent could not avoid having income imputed to him while pursuing a four-year bachelor's degree because such a degree was more education than necessary to acquire "basic job skills"). The trial court made specific findings with respect to Husband's historical earnings, including his wages in the month before the parties' separation. From those factual findings, it is apparent that Husband already possesses the education and training necessary to earn more than minimum wage. Consequently, the trial court did not err by imputing income to Husband despite his attendance at technical college.

### C. The Trial Court's Findings Do Not Support Its Conclusion that Husband Had the Ability to Pay Alimony of $800 per Month to Wife.

¶ 19 Husband's final challenge to the alimony award is that the trial court's findings of fact do not support its conclusion that Husband has the ability to pay Wife $800 per month. Husband's argument involves two components: (1) that the trial court did not enter findings of fact that support the imputed salary range of $30,000 to $40,000 per year; and (2) that even if that range of income were factually supported, it would not put Husband in an economic position that would allow him to pay Wife $800 per month in alimony. We agree with both of Husband's contentions.

¶ 20 As discussed, the trial court must derive the employment potential and probable earnings used to determine the amount of income imputed to a spouse for purposes of determining alimony, "from employment opportunities, work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community, or the median earnings for persons in the same occupation in the same geographical area." Utah Code Ann. § 78B–12–203(7)(b) (2008). Here, the trial court made specific findings regarding Husband's work history, noting

annual salaries in each position between $25,382 and $46,000 per year. For purposes of assessing Husband's employment opportunities, occupational qualifications (other than the physical qualifications addressed above), prevailing earnings of persons of similar backgrounds, and the median earnings of persons in that occupation in the same location, the trial court seems to have relied upon the testimony and report of the vocational specialist. While the vocational specialist's testimony discussed all of these factors, the trial court's findings explicitly include only the vocational specialist's ultimate conclusion that Husband "could earn between $24,000 and $57,000 each year." If the trial court had adopted that conclusion, we might be in a position to conclude that the trial court also implicitly incorporated the data underlying it. *Cf. Hill v. Hill*, 869 P.2d 963, 966 (Utah Ct.App.1994) (upholding the trial court's award of alimony, despite the trial court's failure to make certain explicit findings, because it was clear that "the court fully considered [the challenged] factor[s] at trial"). However, the trial court's Findings of Fact and Conclusions of Law state,

> 25. [A] vocational specialist[ ] conducted an employability evaluation on [Husband] in August 2008.... [The specialist] concluded [Husband] could earn between $24,000 and $57,000 each year, based on her evaluation.
> 26. [Husband] is capable of working full-time and the court will impute an income in a sum between $30,000 and $40,000 annually to [Husband].

Because the trial court's conclusion is not consistent with that of the vocational specialist, we are left to speculate as to which, if any, of the vocational specialist's subsidiary facts and data were rejected by the trial court. "A trial court's findings of fact must show that the court's judgment or decree follows logically from, and is supported by, the evidence. The findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Andrus v. Andrus*, 2007 UT App 291, ¶ 17, 169 P.3d 754 (internal quotation marks omitted). Consequently, we reverse and remand for additional findings as to how the trial court arrived at the amount of income imputed to Husband.

¶ 21 We agree with Husband that the trial court's findings do not support its determination that Husband has the ability to pay Wife $800 per month. The trial court imputed gross income of $30,000–$40,000 per year ($2,500–$3,333 per month) to Husband and also acknowledged that Husband's share of his retirement would be $649 per month.[7] Both Husband's imputed income and his military retirement is taxable. If Husband is taxed, for example, at a rate of 20%, his net monthly income would be $2,519–$3,186.[8] *See generally id.* ¶ 18 (acknowledging that the duty to pay taxes should be considered in determining a party's ability to pay alimony). The trial court found that Husband's claimed expenses of $2,374 per month were reasonable. This means that his remaining disposable income, based on his claimed monthly expenses and the net imputed income range, would be $145–$812 per month. If Husband is only capable of making $30,000 per year—the low end of the range imputed—and Husband's net income is 20% less than his gross income, he does not have the ability to pay Wife more than $145 per month while still covering his own monthly expenses.[9] Consequently, we agree that the trial court's finding that Husband has the ability to pay Wife $800 per month is not supported by its factual findings. Indeed, Husband's ability to stay current on an $800 per month support

7. Husband's $421 per month for disability is exempt from the alimony calculation and his $671 per month for vocational rehabilitation was temporary and expired six months after trial.

8. The trial court made no findings as to what Husband's net income would be based on his imputed income. Wife's net income was approximately 20% less than her gross income for the year 2008, and Wife's annual wages are within $5,000 of the low end of the range imputed to Husband. Therefore, we use the 20% figure for illustrative purposes. Ultimately, it is the responsibility of the trial court to make the final calculation of Husband's net income.

9. Even if Husband's gross annual salary is at the $40,000 peak of the imputed range, the $800 per month alimony figure would leave him only $12 per month of disposable income if a 20% difference between gross and net income is assumed.

obligation, if his imputed income is at the low end of the range found by the trial court, may be mathematically impossible. Therefore, we remand for the trial court to reach a more precise determination of Husband's imputed income and to modify the alimony award as necessary so as not to exceed Husband's ability to pay.

## II. Wife's Ability to Earn

¶ 22 Husband next argues that Wife is underemployed because she works only part-time and that the trial court should have imputed a higher income to her. Husband asserts that Wife is capable of working forty hours per week at $15 per hour and that the court, therefore, should have imputed a gross monthly income of $2,600 to Wife. In awarding alimony, the trial court must consider "the recipient's earning capacity or ability to produce income." Utah Code Ann. § 30–3–5(8)(a)(ii) (Supp.2010). Although courts are not statutorily required to impute a higher income when a spouse is underemployed, see Connell, 2010 UT App 139, ¶ 17, 233 P.3d 836, courts are required to make findings as to the ability of the recipient spouse to support herself, see Utah Code Ann. § 30–3–5(8)(a)(ii). "Imputing income to an unemployed or underemployed spouse when setting an alimony award is conceptually appropriate as part of the determination of that spouse's ability to produce a sufficient income." Willey v. Willey, 866 P.2d 547, 554 (Utah Ct.App.1993). In this case, the trial court did not make any findings of fact as to Wife's earning potential or even address Husband's argument that Wife should be imputed a full-time income.

¶ 23 The trial court's findings as to Wife's earning capacity are limited to stating that she earned $25,000 total gross income and $1,628 monthly net income in 2008, and that her average gross monthly income for the first four months of 2009 was $2,000. These findings are insufficient. See generally Rehn v. Rehn, 1999 UT App 41, ¶ 9, 974 P.2d 306 (holding that it is insufficient for a trial court to "merely reference [a party's] monthly income" without "adequately consider[ing his or] her earning capacity"); Chambers v. Chambers, 840 P.2d 841, 843 (Utah Ct.App.

1992) (holding that the trial court's findings regarding wife's ability to support herself were insufficient where the court made only a "blanket reference" to wife's income while failing to consider her "level of education, health and other matters concerning her immediate or eventual employability"). Further, there is no reason apparent from the record why Wife cannot work full-time. Wife is not in poor health, has no small children in the home, and apparently already has the job training required to work at above minimum wage. Nor is there any indication that full-time employment is unavailable. Wife's own testimony indicates that she did not believe it was "unreasonable to say that [she was] able to work 40 hours a week" and that she was, in fact, looking for a full-time job.

¶ 24 Ultimately, it is within the trial court's discretion whether to impute income to Wife. However, the trial court is required to consider and make factual findings regarding Wife's earning potential. Therefore, we remand for the trial court to make additional findings of fact as to Wife's ability to earn and whether imputation of full-time employment to Wife is appropriate.

## III. Need and Standard of Living

¶ 25 Finally, Husband argues that the trial court erred by setting the parties' needs at a dollar amount higher than what they generally earned during the marriage. In fashioning an alimony award, in addition to the statutory alimony factors, see Utah Code Ann. § 30–3–5(8)(a)(i)–(vii),

> trial courts should be mindful of the primary purposes of alimony: (1) to get the parties as close as possible to the same standard of living that existed during the marriage; (2) to equalize the standards of living of each party; and (3) to prevent the recipient spouse from becoming a public charge.

Jensen v. Jensen, 2008 UT App 392, ¶ 9, 197 P.3d 117 (internal quotation marks omitted).

¶ 26 Husband argues that the alimony award should have been based on the parties' standard of living during the marriage because the circumstances in this case were not such that "equitable principles" would have

justified an award based on the standard of living at the time of trial. *See* Utah Code Ann. § 30–3–5(8)(c) (providing that "[a]s a general rule, the court should look to the standard of living[ ] existing at the time of separation," but a trial court may, "consider[ing] all relevant facts and equitable principles ..., base alimony on the standard of living at the time of trial"). *See generally Martinez v. Martinez*, 818 P.2d 538, 542 (Utah 1991) ("Usually the needs of the spouses are assessed in light of the standard of living they had during marriage."); *Howell v. Howell*, 806 P.2d 1209, 1212 (Utah Ct.App. 1991) (holding that it was appropriate "to look to the standard of living existing at or near the time of trial in determining alimony" where husband's income had doubled between the time of the parties' separation and the time of trial). While we agree with Husband in concept, we see no indication that the trial court based its findings as to Wife's reasonable expenses on a standard of living other than that enjoyed during the marriage. Nor do we find support in the record for Husband's implication that there actually was a significant difference between the parties' standard of living during the marriage and the needs represented by Wife at the time of trial.

¶ 27 Husband argues that the parties' combined need, as calculated by the trial court, exceeds their earned income during the marriage and therefore proves that the trial court based its alimony award on a standard of living higher than that enjoyed by the parties during the marriage. We agree that the combined expenses of the parties found by the trial court could not have been funded during the marriage. Nevertheless, we are not convinced that this reflects the trial court's use of an improper standard of living.

¶ 28 The trial court found that the parties' combined gross income varied from $73,238 in 2002, when both were employed, to $25,816 in 2008, when only Wife was working. The trial court also made specific findings that the "parties are capable of earning a reasonable income" and that during the three years

in which the parties' combined gross income was the lowest, Husband "was either not working or quit working" during the year. Nevertheless, if we assume a reduction of 20% on the highest combined gross income of $73,238 earned during the marriage, the net amount available during the marriage would be insufficient to cover the total of Husband's and Wife's living expenses as found by the trial court.[10] If the combined gross income is reduced by 20%—$14,648—the net combined annual income would be $58,590, or $4,883 per month. The trial court found that Husband's reasonable monthly expenses were $2,374 and that Wife's were $3,000, for a total of $5,374 per month. Thus, even at the highest historical combined income found by the trial court, the parties may have been unable to fund $491 of that amount during the marriage. Although we agree with Husband that this is troubling, it also reflects the reality that it generally costs more to support two individuals in separate households than two individuals in the same household, *see Munns v. Munns*, 790 P.2d 116, 121 (Utah Ct.App.1990) (recognizing that trial courts are often " 'confronted with the impossible task of attempting to cut one blanket to cover two beds' " (quoting *Bader v. Bader*, 18 Utah 2d 407, 424 P.2d 150, 151 (1967))). Therefore, it stands to reason that it would cost the parties more to maintain their preexisting standard of living while living apart than it cost during the marriage.

¶ 29 Furthermore, although the court based its calculation of the parties' needs on their expenses at the time of trial, it does not appear that those expenses reflected a higher standard of living than the parties experienced during their marriage. At trial, Wife was asked about each of her listed expenses in detail and testified that they were in accordance with the standard of living she enjoyed during the marriage. Moreover, the trial court expressly considered the parties' historical income in reaching its conclusion that "the parties are capable of earning a reasonable income." Consequently, we are not convinced that the trial court improperly

---

10. The record reflects that Wife's net income was approximately 20% lower than her gross income of $25,000 in 2008. For purposes of illustration,

we reduce the combined gross income of the parties by that same percentage.

considered a higher standard of living than the parties enjoyed during the marriage.

¶ 30 Our calculations do, however, further convince us that careful consideration should be given by the trial court on remand to each party's earning capacity; the amount of income, if any, to be imputed to each; and the amount that the payor spouse has the ability to pay. If there is not enough combined income available for both spouses to remain at the standard of living enjoyed during the marriage, their incomes should be equalized to the extent possible. *See Batty v. Batty,* 2006 UT App 506, ¶ 5, 153 P.3d 827; *see also Munns,* 790 P.2d at 121.

## CONCLUSION

¶ 31 The trial court did not err by imputing income to Husband; however, the range of income imputed to Husband does not support the trial court's conclusion that Husband had the ability to pay Wife $800 per month in alimony. Furthermore, the trial court failed to make adequate findings regarding each party's earning capacity and whether, and at what amount, income should be imputed to each. Finally, while there is no evidence in the record to suggest that the trial court's calculation of the parties' need failed to consider the standard of living enjoyed by the parties during the marriage, the parties' current expenses compared with their historical combined incomes suggests that the marital standard of living may no longer be a realistic goal. We reverse and remand for further proceedings consistent with this opinion.

¶ 32 WE CONCUR: GREGORY K. ORME and J. FREDERIC VOROS JR., Judges.