**2026 UT App 86**

## THE UTAH COURT OF APPEALS

KRISTINE JENKINS,
Appellee,
*v.*
EVAN K. JENKINS,
Appellant.

Opinion
No. 20241206-CA
Filed May 29, 2026

Fourth District Court, Provo Department
The Honorable Kraig Powell
No. 224400152

Steve S. Christensen and Clinton Brimhall,
Attorneys for Appellant

Emily Adams, Mikayla Irvin, and Kristy Hanson,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion, in which JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     After a two-day divorce trial, the district court imputed a gross monthly income to Evan K. Jenkins and awarded Kristine Jenkins monthly alimony.[1] Evan now appeals the terms of the alimony award, arguing that the court abused its discretion in imputing his income and in crafting the overall award. We affirm.

---

1. Because the parties share a surname, we will refer to them by their given names, with no disrespect intended by the apparent informality.

BACKGROUND

*Procedural History*

¶2     Evan and Kristine married in 1999, and Kristine filed for divorce in January 2022. In her petition, Kristine requested an award of alimony. Evan filed a counter-petition. Therein, he claimed that his income for purposes of calculating child support was "$8,000 gross per month." But he argued that "[n]either Party should be awarded alimony."

¶3     The case proceeded to a two-day bench trial, after which the district court issued a fifty-four-page ruling setting forth its findings of fact and conclusions of law. Both parties subsequently filed posttrial motions, which the court denied. Only two of the issues before the district court are relevant to this appeal: Evan's income and the alimony award. We recount the relevant evidence and the court's related findings on both points.

*Evan's Income*

¶4     At the time of trial, Evan had been an automobile mechanic for twenty-five years and had worked at the same shop since approximately 2010. Evan provided his paystubs and the parties' joint tax returns for 2019 through 2023 as evidence of income. According to the pay stubs and tax returns for the years 2019, 2020, and 2021—*before* Kristine filed for divorce—Evan earned a gross annual income of $150,434; $142,922; and $146,361, respectively. But Evan's gross annual income was significantly lower in 2022 and 2023—*after* Kristine filed for divorce—totaling $96,241 and $100,855, respectively.

¶5     Both parties testified regarding Evan's income. For her part, Kristine explained that throughout the marriage, Evan threatened to lower his income by working less so that Kristine would not "get any money, his money." Kristine stated that in October 2021, she and Evan had an argument, during which Evan

"threatened that he wasn't going to give [her] any money, and that he wasn't going to pay alimony." According to Kristine, Evan's coworkers had "advised him to work less so that [she] would not get any alimony." And Kristine averred that Evan had followed through with his threats, noting that Evan's monthly pay stubs reflect a "significant drop" in income from October 2021 onward. Given all this, Kristine asked the court to find that Evan was "voluntarily underemployed" and to calculate Evan's gross monthly income "based on the average of his 2019–2021 average gross monthly incomes." Using this formula, Kristine requested that Evan be imputed $13,009 per month in income.

¶6     For his part, Evan conceded that he and Kristine had an argument in October 2021. But Evan maintained that he never told Kristine that he was going to stop working or that he would not pay expenses. Evan testified that he was working full-time and that he was earning as much as he could earn. He attributed the decrease in his income to a change of ownership in the company he worked for, which occurred around the same time as his argument with Kristine. Evan explained that his new employer had implemented several changes to its business model that had negatively impacted his compensation. Additionally, Evan claimed that Kristine was informed about the sale of the company approximately one year before it went through and that she had accompanied him to search for a new job in anticipation of this change.

¶7     Evan opposed Kristine's suggestion that the district court should find him voluntarily underemployed and impute him income "beyond what he ha[d] been demonstrated to be earning at [that point]," given that the reduction in income was the fault of his new employer and "was out of Evan's control and involuntary." Evan requested that the court calculate his income using his 2023 pay stubs, which reflected an average gross monthly income of about $8,037.

*Alimony*

¶8      Kristine testified that she had not been employed for the vast majority of the marriage. She explained that, instead, she made an agreement with Evan that she would work in the home raising their four children and "supporting Evan in his career." In March 2022, a few months after filing for divorce, Kristine returned to work part-time as a hair stylist, earning around $14 per hour plus tips. Based on her financial declaration, Kristine stated that her monthly need was $7,653, and she asserted that without alimony, her income was not sufficient to meet her need.

¶9      Kristine also testified about difficulties in the marriage. She stated that Evan did not "respect boundaries or rules" and that Evan had been unfaithful throughout the marriage. Kristine recounted details about several of Evan's extramarital relationships, including his most recent affair with his massage therapist. Kristine testified that Evan and the massage therapist met in 2018 and that since then, Evan had expended significant funds on her, giving her a car and paying for more than $6,700 in emergency dental work.

¶10      Lastly, Kristine testified about Evan's "sexual and financial abuse." She explained that "[n]o doesn't mean no to [Evan]," so if she refused his request to have sexual intercourse, "he would force himself onto [her]" or wait until she fell asleep to have sex with her. Kristine recounted that on one occasion, she had to be taken to the hospital after Evan "drugged" her and "forced himself onto [her]." She also stated that Evan had "complete control" of the family's finances and would "withhold financial support in exchange for sex." According to Kristine, Evan's abusive behavior caused her to experience "[i]nsomnia, depression, anxiety, weight gain, hair loss," and post-traumatic stress.

¶11      Based on her need, Evan's ability to pay, and Evan's fault in the breakup of the marriage, Kristine requested a monthly

alimony award of $3,147. Kristine cited Evan's admissions "that he spent thousands of dollars on extramarital affairs" as a basis for the district court to find fault.

¶12 Evan admitted engaging in inappropriate behavior with other women during the course of the marriage. In particular, he confirmed having a sexual relationship with his massage therapist, "fondl[ing]" two women over their clothes, and spending time with another woman. He acknowledged purchasing various things for the massage therapist—including a car and dental work—however, he claimed that she had paid him back for the car and some of the dental work. And although Evan admitted to being arrested and charged with rape and forcible sodomy of Kristine following the incident leading to her hospital visit, he denied drugging her. He likewise denied restricting Kristine's access to the family's finances.

¶13 In light of the evidence presented at trial, Evan requested that the district court award Kristine monthly alimony in the amount of $108.99. In so doing, he pushed back on Kristine's suggestion that the court should consider fault in awarding alimony, citing "a lack of testimony or evidence" demonstrating that Evan's extramarital relationships "substantially contributed to the dissolution" of the marriage or that they had a "harmful effect." And without such evidence, Evan argued, the court was "unable to ascertain that 'fault' applie[d]."

*The District Court's Rulings*

¶14 The district court first addressed the parties' incomes. As to Kristine, the court found that she was underemployed and imputed income to her based on what she could earn if employed full-time as a hairstylist. And as to Evan, the court found that he was employed as an auto mechanic, that he had worked for the same company since 2011, and that he was "the longest-serving mechanic currently at his workplace." The court recognized that in late 2021, Evan's company changed ownership, that the new

owner "changed the business structure," and that "Evan was not responsible for, and had no control over, this change." The court detailed Evan's claims about how the changed business policies had negatively impacted his earnings and explained that while it found Evan's testimony about these changes to be "partially credible," Evan's testimony contained "enough ambiguity" to support a conclusion "that Evan could do more, if he wanted, to ensure a higher amount of income." Additionally, the court did "not doubt" Kristine's claim that Evan had threatened to "intentionally start earning less so that she would not be awarded as much" alimony.

¶15 Based on the foregoing, the district court found that Evan was "voluntarily underemployed," as evidenced by his "precipitous drop in income of more than $50,000 per year from 2021 to 2022, after Kristine filed for divorce." Nevertheless, the court disagreed with Kristine's suggestion "that all of Evan's drop in income was due to his decision to engage in voluntary underemployment." Thus, the court concluded that it would not "be accurate or equitable" to impute income to Evan in the amount suggested by Kristine. Instead, the court calculated Evan's gross monthly income based on his highest bi-weekly earnings from 2023, resulting in the amount of $9,904.

¶16 The district court then considered Kristine's request for alimony. The court first examined whether Evan's conduct qualified as fault such that it should be considered in awarding alimony. The court made dozens of factual findings relating to Evan's infidelity, and it also found that Evan's denials were "not credible." The court found that Evan's extramarital affairs "were a source of great contention between Evan and Kristine," specifically noting that "Evan's use of marital funds to purchase items for a person with whom he was having an affair significantly damaged" the marriage. The court found that Evan had frequently demanded that Kristine have sex with him even if she did not want to, and that he had "often engaged in sexual

intercourse with Kristine without her consent." Moreover, the court determined that Evan had used his control of the family's finances to manipulate Kristine. Based on all of this, the court concluded that Evan's conduct had "substantially contributed to the breakup of the marriage, meaning Evan's conduct constitute[d] fault," and could therefore be considered by the court in determining alimony.

¶17　Next, the district court evaluated "the gravity of the harm caused by [Evan's] fault." The court found that Evan's sexual infidelity was the "root cause" of the harm to Kristine and to the parties' marriage. Specifically, the court found that Evan's affairs were "deeply distressing to Kristine," "were financially damaging to the marriage," and caused Evan and Kristine "to lose affection for each other." The court further found that "Evan compounded his fault by using financial leverage to control Kristine."

¶18　Based on the harm caused by Evan's fault, the district court concluded "that it would be inequitable to allow Evan to enjoy the same standard of living to which he was accustomed during the marriage." "In light of the limited funds available to the parties," and "in equity and fairness," the court elected to reduce Evan's proposed living expenses "to allow Kristine to enjoy the accustomed marital standard of living."

¶19　The district court then proceeded to examine Evan's proposed living expenses. The court departed from the default rules of alimony and reduced Evan's proposed expenses in several categories, including rent, food and household supplies, gasoline, and automobile payment. The court emphasized that these reductions were not "imposed as a punishment on Evan for his at-fault conduct." Rather, the court reiterated, they were intended "to prevent the inequity to Kristine of having to live at less than her marital standard of living." In total, Evan's proposed-needs budget was reduced by $1,134, resulting in a monthly needs budget of $4,908.

¶20    The district court also evaluated Kristine's proposed needs budget. After finding that some of Kristine's proposed expenses were not reasonable in light of the marital standard of living and reducing those expenses, the court found that Kristine's total monthly need was $6,124. The court then concluded that Kristine had a need for alimony and Evan had the ability to pay it.

¶21    Based on the foregoing calculations, the district court found that Evan had a monthly surplus of $2,242 available to pay Kristine alimony and that Kristine had "a deficit of $3,719 in meeting her needs." Because Evan's surplus was insufficient to cover Kristine's needs, the court ordered each party to bear one half of the $1,477 shortfall. Thus, "[c]ombining the $2,242 available as Evan's excess income and the $738 of his required shortfall payment," the court ordered Evan to pay Kristine $2,980 in monthly alimony, with payments to be ongoing for as long as the marriage had lasted.

ISSUES AND STANDARDS OF REVIEW

¶22    Evan raises two issues on appeal. First, he argues the district court abused its discretion when it imputed income to him for purposes of calculating alimony. "Courts have broad discretion to select an appropriate method of assessing a spouse's income, including determinations of income imputation. When challenging an income determination, appellants bear a heavy burden, and we can properly find abuse of discretion only if no reasonable person would take the view adopted by the trial court." *Merrill v. Merrill*, 2024 UT App 125, ¶ 30, 556 P.3d 1070 (quotation simplified).

¶23    Second, Evan argues the district court abused its discretion in awarding Kristine alimony. "Trial courts have broad latitude in determining whether to award alimony and in setting the amount, and we will not lightly disturb a trial court's alimony ruling." *Rule v. Rule*, 2017 UT App 137, ¶ 11, 402 P.3d 153

(quotation simplified). "Therefore, we review alimony awards under an abuse of discretion standard." *Olsen v. Olsen*, 2007 UT App 296, ¶ 8, 169 P.3d 765.

ANALYSIS

I. Evan's Income

¶24 Evan argues the district court abused its discretion when it imputed his income for purposes of determining alimony. In particular, he contends the court's factual findings supporting the imputation are inadequate and based on speculation.

¶25 District "courts have broad discretion to select an appropriate method of assessing a spouse's income, including determinations of income imputation." *Merrill v. Merrill*, 2024 UT App 125, ¶ 30, 556 P.3d 1070 (quotation simplified). A court does not abuse its discretion if its decision is supported by adequate findings and evidence in the record. "Findings are adequate when they contain sufficient detail to permit appellate review to ensure that the district court's discretionary determination was rationally based." *Fish v. Fish*, 2016 UT App 125, ¶ 22, 379 P.3d 882. We will not disturb the court's factual findings "unless they are clearly erroneous, that is, unless they are in conflict with the clear weight of the evidence, or this court has a definite and firm conviction that a mistake has been made." *Fox v. Fox*, 2022 UT App 88, ¶ 13, 515 P.3d 481 (quotation simplified).

¶26 "A court may impute income to an underemployed spouse for purposes of calculating alimony." *Connell v. Connell*, 2010 UT App 139, ¶ 16, 233 P.3d 836. Any income imputation must be based "upon employment potential and probable earnings considering, to the extent known," a variety of enumerated

factors. Utah Code § 81-6-203(6)(b).[2] These factors include "employment opportunities," "work history," and "prevailing earnings and job availability for persons of similar backgrounds in the community." *Id.* If a court imputes a greater income, the court "shall enter specific findings of fact as to the evidentiary basis for the imputation." *Id.* § 81-6-203(6)(d).

¶27 After considering all the evidence before it, the district court found that Evan was voluntarily underemployed; on this basis the court deemed it appropriate to impute to Evan additional income for purposes of calculating alimony. Then, using "Evan's employment potential and probable earnings," the court found that Evan should be imputed additional monthly income calculated based on his highest 2023 paycheck. Evan contends the court abused its discretion by imputing him additional income based on his historical income because the court made "no concrete findings to establish that [he] is underemployed" and because the amount of additional income the court chose to impute was based on speculation. These claims are belied by the court's extensive factual findings.

¶28 First, the district court's determination that Evan was voluntarily underemployed is supported by adequate findings and evidence in the record. A spouse is voluntarily underemployed "when he or she intentionally chooses of his or her own free will to become . . . underemployed." *Rayner v. Rayner*, 2013 UT App 269, ¶ 7, 316 P.3d 455 (quotation simplified). In making this determination, the court must consider "all the relevant circumstances, and not just whether a [spouse's] salary has recently dropped." *Fox*, 2022 UT App 88, ¶ 38; *see also* Utah Code § 81-6-203(3)(a) (stating that the court "shall use historical

---

2. Although this statute "addresses imputation for the purposes of child support, it is also relevant to imputation in the alimony context." *Fish v. Fish*, 2010 UT App 292, ¶ 14 n.5, 242 P.3d 787.

and current earnings to determine whether" a spouse is underemployed).

¶29 In finding that Evan was voluntarily underemployed, the district court addressed Evan's employment history and salary between 2019 and 2023. The court found that Evan had been employed in the same position with the same company since 2011 and that he was "the longest-serving mechanic currently at his workplace." The court found that Evan's gross income sharply dropped in 2022, after Kristine filed for divorce. The court accepted Evan's testimony that a change in ownership at his company in late 2021 resulted in changes to his pay structure. However, the court also found credible Kristine's claim that Evan had threatened to "intentionally start earning less so that she would not be awarded as much" alimony. Ultimately, the court concluded that "the reality" about Evan's drop in income lay somewhere between the parties' positions. And based on Evan's testimony about the ways in which the business structure at his company had changed, the court identified several ways in which Evan could earn more money with his current employer, including by leveraging his "seniority and value to the company" to secure more lucrative jobs or by working more efficiently.

¶30 The district court's findings regarding Evan's employment are sufficiently detailed to "disclose the steps" the court took to reach its ultimate conclusion that he was underemployed. *Rayner*, 2013 UT App 269, ¶ 11 (quotation simplified). We do not agree with Evan that there is any disconnect between the court accepting his testimony that the sale of his company resulted in a new pay structure that reduced his income and the court finding that he was voluntarily underemployed. While the new pay structure might have reduced Evan's income in general, that does not preclude a determination that Evan was purposefully not maximizing his salary under the new structure. Moreover, the court fully accepted Evan's testimony that the sale had occurred; but it also found that not all of Evan's decreased earnings could

be attributed to the sale and that the "precipitous drop in income" demonstrated that Evan had acted on his threat to reduce his income and, thus, that he was voluntarily underemployed. The court was not required to explain why it found Kristine's testimony about Evan's threat more credible than Evan's testimony regarding the impact of the sale, and it is not our job to second guess the court's credibility determination.[3] *See Shuman v. Shuman*, 2017 UT App 192, ¶ 6, 406 P.3d 258.

¶31 Moreover, the amount of additional income the district court chose to impute was supported by sufficient evidence and not merely based on speculation. As already explained, the court examined Evan's historical earnings with his current job along with his "skills, experience, and training," and found that Evan could earn substantially more than he was at the time of trial. Then, based on this evidence, the court found it appropriate to impute an amount based on Evan's highest paycheck of 2023 (a date which was after both Evan's threat to decrease his income and the implementation of the new pay structure at his company). Given that the court considered the statutory factors and relied on Evan's actual pay data in the record, we cannot conclude that the imputation finding was clearly erroneous. *See Fox*, 2022 UT App 88, ¶ 13.

¶32 In sum, the district court did not abuse its discretion with respect to imputing income to Evan. The court's findings are sufficiently detailed to disclose the steps by which the court

---

3. Even if Evan had not made an explicit threat, Kristine would still have been entitled to consideration that Evan's significant drop in income was due to purposeful underemployment. *See Fox v. Fox*, 2022 UT App 88, ¶ 39, 515 P.3d 481 ("[A] drop in income can be an important factor in determining that a spouse is underemployed.").

reached its conclusion to impute income, and the record contains evidence supporting the amount the court chose to impute.

## II. Alimony and Fault

¶33    Next, Evan challenges the district court's alimony determination. He contends the award is inequitable overall and therefore an abuse of the court's discretion. We disagree.

¶34    "The overarching aim of a property division, and of the decree of which it and the alimony award are subsidiary parts, is to achieve a fair, just, and equitable result between the parties." *Gardner v. Gardner*, 2019 UT 61, ¶ 48, 452 P.3d 1134 (quotation simplified). District courts are afforded wide discretion in crafting an alimony award, so long as they consider the required statutory factors, *see* Utah Code § 81-4-502(1). These include "the standard of living existing during the marriage," "the financial condition and needs of the payee," and "the ability of the payor to provide support." *Id.* § 81-4-502(1)(a)–(b), (d). The court may also "consider the fault of the parties in determining whether to award alimony and the terms of the alimony." *Id.* § 81-4-502(2)(a). A spouse's extramarital affair constitutes fault if it "substantially contributed to the breakup of the marriage." *Id.* § 81-4-501(3)(a).

¶35    If, after assessing these factors, the district court "finds that the receiving spouse is unable to meet [his or] her own needs with [his or] her own income, the court must then assess whether the payor spouse's income, after meeting his [or her] needs, is sufficient to make up some or all of the shortfall between the receiving spouse's needs and income." *Redden v. Redden*, 2020 UT App 22, ¶ 21, 461 P.3d 314 (quotation simplified). In cases where the parties' combined resources are not sufficient to meet both parties' needs, the court enjoys "broad discretion in dividing the shortfall and apportioning that burden, so long as the award is equitable and supported by the findings." *Rule v. Rule*, 2017 UT App 137, ¶ 21, 402 P.3d 153.

¶36 The district court in this case properly followed the above process in awarding Kristine monthly alimony. The court first addressed the parties' gross monthly incomes. The court found that both parties were voluntarily underemployed and imputed income to each. The court then considered Evan's fault. After finding that Evan's conduct satisfied the statutory definition of fault, the court identified several ways in which Evan's fault had harmed Kristine and the parties' marriage. These included that Evan's affairs were "deeply distressing to Kristine" on an emotional level and "were financially damaging to the marriage." In light of Evan's fault, the court concluded it would be appropriate to reduce some of Evan's proposed living expenses "to allow Kristine to enjoy the accustomed marital standard of living."

¶37 Next, the district court turned to the parties' proposed-needs budgets. Based on the evidence presented at trial, the court found that some of Kristine's proposed expenses were excessive in light of the marital standard of living and accordingly reduced those expenses. Regarding Evan's budget, the court found that his proposed health insurance expense was excessive in light of the fact that most of the parties' children had become adults, and the court accordingly reduced that expense; however, the court also made several fault-based reductions to Evan's otherwise reasonable expenses. After making these adjustments, the court determined that Kristine had a deficit of $3,719 in meeting her needs and that Evan had a surplus of $2,242 available to pay Kristine alimony. Applying Evan's surplus to Kristine's deficit, the court found that Kristine was still left with a $1,477 shortfall. The court concluded that "[i]n equity," Evan and Kristine would "each bear one-half of this shortfall." Thus, the court ordered Evan to pay Kristine $2,980 in alimony.

¶38 Despite the fact that the district court carefully adhered to the proper procedure when awarding alimony, Evan argues that the award is unreasonable "because there is not enough money to

enable the district court to make fault-based reductions and because there are not sufficient findings of fact to support the fault-based reductions anyway." Evan's arguments are unavailing.

¶39 First, much of Evan's reasonableness argument is premised on his belief that the district court improperly imputed income to him. That is, Evan contends the court abused its discretion because it "split the shortfall *after* imputing [him] income he does not have and *after* arbitrarily slashing his expenses because of the fault determination." In essence, it is Evan's position that the award is inequitable because the court artificially inflated his ability to pay alimony through imputation. But because we have already determined that the court properly imputed income to Evan, it was not unreasonable or an abuse of discretion for the court to use that imputed figure when calculating alimony.

¶40 Nor was it unreasonable for the district court to reduce Evan's expenses based on his fault. Evan claims that where, as here, a shortfall exists, it is per se unreasonable for a court to make fault-based reductions to a party's reasonable expenses. But this position is directly at odds with controlling authority. "Although courts should begin each alimony determination by considering the parties' respective economic circumstances with the aim of equalizing their post-divorce standards of living as nearly as possible to the standard of living they enjoyed while married, both our case law and the language of the alimony statute demonstrate that courts may depart from these default rules where necessary to achieve a fair and equitable result between the parties." *Gardner*, 2019 UT 61, ¶ 47. "[W]here one party's fault has harmed the other party, the court may attempt to re-balance the equities by adjusting the alimony award in favor of the party who was harmed by that fault." *Id.* ¶ 61. So long as the court has correctly determined that conduct qualifies as fault and entered sufficient findings regarding the requisite harm caused by the fault, "we will not disturb the court's alimony determination

unless the factual findings underlying the determination are insufficient or clearly erroneous, or the resulting alimony award causes such serious inequity as to manifest a clear abuse of discretion." *Id.* ¶ 65.

¶41 As just explained, before setting the alimony award, the district court thoroughly considered Evan's conduct, found that he was substantially at fault for the breakup of the marriage, and found that his conduct had harmed Kristine and the marriage.[4] Based on the harm caused by Evan's fault, the court elected to reduce some of Evan's proposed living expenses. "[O]nce a court decides to base a party's alimony award on a lower standard of living than he or she enjoyed during marriage, it will inevitably have to reduce that party's expected monthly expenses. In practice, this will require the court to reduce the costs of specific line items in that person's budget." *Id.* ¶ 77. That is exactly what the court did here: it carefully combed through Evan's anticipated expenses and *reduced* several of those claimed expenses but did not *eliminate* any of them.[5] And the court made clear that these reductions were not designed to punish Evan for his at-fault conduct but were instead intended to prevent inequity to Kristine. Thus, contrary to Evan's assertions, the court's fault reductions were not arbitrary and were supported by adequate findings.

---

4. Evan does not directly challenge the district court's fault determination. Rather, his appellate argument concerns the supposedly "arbitrary" fault-based reductions.

5. As Evan himself acknowledges, the district court's budget is sufficient to cover his basic needs such as housing, food, and healthcare. Furthermore, the court's budget provides for a number of discretionary expenses, including a line-item for retirement account contributions, which the court awarded without prompting from Evan.

Under the deferential standard of review, we cannot say that the court abused its discretion in determining alimony.

CONCLUSION

¶42   The district court acted within its discretion in imputing income to Evan and in setting alimony. The court's determinations are supported by sufficient factual findings and are not clearly erroneous. We therefore affirm.

_____